FILED

2016 Feb-24  PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| MARSHA LOVE, } | |
| } | |
| Plaintiff, } | CIVIL ACTION NO. |
| } | |
| v. } | 6:15-cv-338-WMA |
| } | |
| CAROLYN W. COLVIN, Acting } | |
| Commissioner of Social } | |
| Security Administration, } | |
| } | |
| Defendant. } | |

## MEMORANDUM OPINION

Plaintiff Marsha Love brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's final decision denying her application for disability insurance benefits. Wallace timely pursued and exhausted the administrative remedies available to her before the Social Security Administration. Based on the court's review of the record and the briefs submitted by the parties, the court finds that the Commissioner's decision is due to be reversed and the action remanded to the Commissioner for an award of benefits.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for social security benefits, a non-elderly claimant must, *inter alia*, show that she is disabled. 42 U.S.C. §§ 423(a)(1)(D), 1381a (2012). A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

1

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2012). To determine if a claimant is disabled, the Social Security Administration employs a five-step process, which is followed at each level of administrative review. 20 C.F.R. § 404.1520(a)(4)(i)-(v). A conclusive finding may be made at each step; if not, the Commissioner's review continues to the next step. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4). Second, the Commissioner must determine whether the claimant has "a severe medically determinable physical or mental impairment" expected to result in death or to last at least one year. If not, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the Commissioner must determine if any of the claimant's impairments meets or exceeds the requirements of an impairment within the Listing of Impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the Commissioner has not made a conclusive determination after the third step, she must assess the claimant's Residual Functional Capacity (RFC). 20 C.F.R. § 404.1520(a)(4). The RFC measures the claimant's ability to work in spite of her

impairments. 20 C.F.R. § 404.1545(a)(1).

Fourth, the Commissioner must determine if the claimant's RFC allows her to perform her past relevant work. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth, the Commissioner must determine whether there exist a significant number of jobs in the national economy that the claimant's RFC allows her to perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). If a significant number of such jobs exist, the claimant is not disabled; if not, she is disabled. *Id.*

## FACTUAL BACKGROUND

Love applied for disability insurance benefits on March 22, 2012. (R. at 74). She alleges that she became disabled on August 1, 2011. (R. at 74). She complains of disabling pain in her lower back and right leg. (R. at 44). Love has had three back surgeries, the first two occurring in the 1990s. (R. at 48-50). The third occurred due to a workplace injury in August 2006 in which she bent over and attempted to lift a trash bag out of a cart, but the bag was much heavier than she expected. (R. at 338, 366). After unsuccessful attempts to alleviate her pain by less invasive means, Love underwent an anterior lumbar interbody fusion in December 2006. (R. at 363-66).

The surgery initially relieved much of her pain, but the pain eventually returned due to degenerative discs observed by her doctor. (R. at 51, 355). Her doctor attempted to treat the pain

with pain medication and epidurals, but with little to no success. (R. at 350). He recommended in March 2012 that she begin to see a pain specialist. (R. at 350). Love also underwent gastric bypass surgery in March 2011, (R. at 221), and she lost 145 pounds as a result of the surgery. (R. at 393).

After a visit with a different specialist in August 2012, Dr. Kendrick became Love's treating pain management specialist in October 2012. (R. at 302, 392). Dr. Kendrick diagnosed Love with post-laminectomy syndrome, (R. at 392), also known as "failed back surgery syndrome," and attempted treatment with a variety of medications, largely with limited success. (R. at 385-411, 426-49). Dr. Kendrick has administered two epidurals to Love, which provided some temporary relief. (R. at 53).

Love worked full-time until August 2011. (R. at 296). She then transitioned to a part-time job, where she worked until April 2013. (R. at 41, 432). She testified that her part-time job involved answering phones, receiving money, checking truck rentals in and out, and handling paperwork. (R. at 42-43). She was allowed to alternate standing and sitting at her desk as needed to alleviate her back and right leg pain, and she occasionally walked outside to inspect the returned rental trucks. The inspection only required walking around the truck and opening the back door, not climbing into the truck. (R. at 43-44, 62-63). Love never lifted more than ten pounds, only lifting and moving papers. (R. at 192).

Love reported that she initially worked approximately twenty hours per week. She typically worked three days a week in four- to eight-hour shifts. (R. at 192). Love testified, however, that her symptoms eventually caused her to reduce her work schedule.[1] She was sometimes unable to complete two days of work per week, and after she completed the second day of work she was heavily fatigued and in great pain. (R. at 43). She testified that there was "no way" she could have worked more days per week. (R. at 44). She eventually stopped working entirely in April 2013. (R. at 41, 432).

Love testified that she cannot sit, stand, or walk for long periods of time because of her pain. She can only stand for five to fifteen minutes at a time, sit for thirty to forty minutes at a time, and walk for thirty to forty feet at a time. (R. at 56-57, 183). Her daily activities are accordingly limited - she can do some dusting, fold laundry, sweep, and pick up clutter on good days, but she cannot clean dishes or do other chores that require standing for long periods. (R. at 46-47). She can drive short but not long distances because of the pain from sitting. Consequently, she is regularly driven to her appointments with Dr. Kendrick. (R. at 64). She goes grocery shopping weekly but needs help lifting items heavier than milk. (R. at 63). She can dress herself and prepare frozen meals and sandwiches but does not have the stamina

---

[1] This reduction is evidenced by her pay records, which show that she averaged much less than twenty hours per week at work. (R. at 149).

to cook full-course meals. (R. at 178, 180). Her children largely take care of themselves and assist with chores. For instance, they wash the dishes and remove clothes from the dryer. (R. at 47, 178-80). In connection with this case, Dr. Kendrick stated his opinion that Love's medical conditions cause her pain and that she is not malingering, opining that "[h]er symptoms are anatomically appropriate for her levels of previous surgery." He stated that a job requiring Love to sit or stand for prolonged periods during an eight-hour workday without the opportunity to recline would increase her pain, and that such a pain increase would "cause serious distraction from job tasks and/or result in a failure to complete job tasks in a timely manner on more than an occasional basis." (R. at 450-52).

After a hearing, the ALJ on September 30, 2013, found Love not to be disabled. (R. at 30). He began by finding that Love has not engaged in substantial gainful activity since August 1, 2011, the alleged onset date, because her part-time work since that date "did not exceed the threshold for substantial gainful activity." (R. at 23). He next found that Love suffers from the following severe impairments: "degenerative disc disease of the lumbar spine, status post lumbar surgery, obesity, hypertension, depression, obsessive compulsive disorder, and panic disorder," though none of the impairments met or exceeded a listing. (R. at 23, 25). The ALJ next determined Love's RFC, which he listed as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant can frequently push/pull with her upper extremities bilaterally. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She is precluded from climbing ladders, ropes or scaffold. She can maintain occasional exposure to extreme cold and heat; she should avoid all exposure to unprotected heights and hazardous, moving machinery. She can understand, remember, and carry out simple instructions for two-hour periods and with normal breaks can complete an eight-hour day. She can sustain occasional decision-making and infrequent changes in the work setting. She can maintain occasional interaction with the public and co-workers, but no tandem tasks.

(R. at 27-28). To the extent Love's testimony and Dr. Kendrick's submitted opinion contradicted this finding, the ALJ found those statements not credible for the varied reasons discussed below. (R. at 27-28).

Based on the RFC finding, the ALJ found that Love was able to perform her past relevant work as a housekeeper/cleaner and is therefore not disabled. (R. at 29). According to the ALJ, the VE's testimony established that the demands of this job fall within Love's above-described RFC. The VE also testified, however, that a person would not be able to sustain employment if she suffered from increased pain levels due to prolonged sitting and standing that seriously interfered with her ability to complete jobs in a timely manner on more than an occasional basis. (R. at 71).

Love appealed the ALJ's decision, but the Appeals Council denied review on December 30, 2014. She timely appealed to this court on February 25, 2015. On appeal, Love challenges the

Commissioner's decision on four grounds. Because the court finds two of those grounds to be dispositive, the court will limit its review to those two grounds.

**DISCUSSION**

**A. Standard of Review**

"[R]eview of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Review of the Commissioner's factual findings is highly deferential; "[i]f the Commissioner's decision is supported by substantial evidence [the court] must affirm, even if proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.3d 1233, 1239 (11th Cir. 1983). "A 'substantial evidence' standard, however, does not permit a court to uphold the [Commissioner's] decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir.

8

1983).

"In contrast to the deferential review accorded to the [Commissioner's] findings of fact, the [Commissioner's] conclusions of law, including applicable review standards, are not presumed valid." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Such conclusions of law are reviewed *de novo. Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). "The [Commissioner's] failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." *Martin*, 894 F.2d at 1529.

## B. Rejection of Love's Subjective Testimony

In making his RFC finding, the ALJ rejected much of Love's testimony concerning her pain and limitations. Specifically, Love testified that her back and right leg pain prevent her from sitting or standing uninterrupted for more than 40 minutes at a time, (R. at 56-57), and that there was "no way" that her pain would allow her to work more frequently than she did at her part-time job. (R. at 44). Eleventh Circuit precedent "requires that an ALJ apply a three part 'pain standard' when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical

> evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The standard seeks to ensure that objective medical evidence confirms the existence or likelihood of the pain or other subjective symptoms complained of by the plaintiff.

If the plaintiff's testimony satisfies this standard, the ALJ may still discredit the testimony, but he "must articulate explicit and adequate reasons for doing so," *Foote*, 67 F.3d at 1561-62, and "such articulation of reasons by the [ALJ must] be supported by substantial evidence," *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). "Failure to articulate the reasons for discrediting subjective testimony," or a failure to support those reasons by substantial evidence, "requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225.

In this case, the ALJ found that Love's "medically determinable impairments could reasonably be expected to cause some symptoms," thus satisfying the requirements of the pain standard. (R. at 28). The ALJ found, however, that her subjective testimony regarding the intensity, persistence, and limiting effects of her symptoms was not entirely credible for two reasons. (R. at 28). The court finds that neither of the ALJ's given reasons for discrediting Love's testimony is supported by substantial evidence.

### 1. Love's part-time job and daily activities

First, the ALJ found that Love performed greater exertional tasks than would be possible while suffering from her alleged limitations, as evidenced by her part-time work and by her daily activities. According to the ALJ, Love's part-time work required her to walk, stand, and sit for 4-8 hour periods, three days a week. (R. at 29). The ALJ also noted that Love was able to dress herself, drive, handle money, prepare meals, fold clothes, dust, mop, shop, leave the house alone, read, and care for two teenaged children.[2] (R. at 26, 29).

The Commissioner is expressly permitted to consider a claimant's daily activities when evaluating the credibility of the claimant's complaints of subjective symptoms. 20 C.F.R. § 404.1529(c)(3)(i). Evidence of daily activities is a proper basis to discredit a claimant's testimony when her daily activities demonstrate a higher level of functioning than her alleged disabling symptoms would allow. *See, e.g.*, *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002).

The ALJ placed strong emphasis on Love's ability to work part-time during the alleged period of disability to discredit her testimony of disabling limitations. According to the ALJ, the fact

---

[2]The ALJ also noted, without explanation, that Love in August 2012 dropped a 6x6 piece of wood on her left foot. (R. at 28). Without more information, the court does not find that this one-time accident supports the ALJ's discrediting of Love's testimony.

that Love was able to work four to eight hours per day for three days per week demonstrates that her abilities to sit, stand, and walk are not as impaired as she alleges. The court disagrees and finds that the ALJ improperly decided that Love was able to complete her part-time work without significant difficulty and that her part-time work demonstrated an ability to work full-time.

Almost all evidence in the record regarding Love's part-time job was provided by Love. She stated that she worked up to three days per week, four to eight hours per day, and twenty hours per week. (R. at 172, 192). She noted that she was permitted to move around the office as needed to help her pain, (R. at 44, 192, 294), but even this freedom did not allow her to sufficiently function. She testified without contradiction that she was frequently unable to work even two days per week because of her pain, often requesting to leave work early. (R. at 43-44). Indeed, this testimony is supported by her pay records, which show that she actually worked substantially less than twenty hours per week. (R. at 149, 172). In July 2012, she reported to her doctors at Southern Orthopedic Spine & Rehab that her pain caused her to take four sick days per month. (R. at 335). She testified, again without contradiction, that the work caused her severe pain and fatigue and that she could not possibly work more often than she did. (R. at 43-44). The day after she completed her work for the week, she was essentially unable to function because of the pain and fatigue. (R.

12

at 43). She eventually stopped working altogether. (R. at 41).

Despite this evidence, and despite the lack of contrary evidence, the ALJ discussed Love's part-time work as if she performed it without difficulty and thereby demonstrated an ability to walk, sit, or stand for four to eight hours. From there, the ALJ essentially found that her part-time work and requisite abilities showed that she is able to work **full-time**. But this stands in direct contradiction to Love's unrebutted testimony that there was "no way" her symptoms would allow her to work any more than she did, corroborated by her pay records showing that she did not regularly work even twenty hours per week. (R. at 44, 149). Given that her part-time work did not reach the level of substantial gainful activity (R. at 23), and given the lack of evidence that Love could work any more hours than at the part-time job, the ALJ's conclusion that this work demonstrated an ability to work full-time is unsupported by substantial evidence.

Love's daily activities similarly do not discredit her testimony that she is unable to sit, stand, or walk with the requisite stamina to maintain full-time work. Numerous courts in this circuit have found that "participation in everyday activities of short duration" does not disqualify a claimant from disability and have reversed ALJ decisions relying on such participation to discredit the claimant. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997); *see also Early v. Astrue*, 481 F. Supp. 2d 1233,

1238-39 (N.D. Ala. 2007) (finding that doing house and yard work, caring for pets, grocery shopping, and occasional fishing were not substantial daily activities upon which to discredit the claimant's testimony); *Horton v. Barnhart*, 469 F. Supp. 2d 1041, 1046-47 (N.D. Ala. 2006) (finding that driving, shopping, attending church, cleaning, cooking, reading, watching television, caring for personal needs, keeping up with friends, and walking for exercise were not substantial activities sufficient to discredit the claimant's testimony); *Stewart v. Astrue*, 551 F. Supp. 2d 1308, 1321 (N.D. Fla. 2008) ("Activities of daily living are often not substantial evidence in the record to discount a claimant's testimony, and the ALJ should proceed with caution in relying upon them to discredit a claimant."). "It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances." *Early*, 481 F. Supp. 2d at 1239.

In this case, Love's daily activities are not inconsistent with her alleged disabling limitations. For instance, while Love testified that she is able to drive, she also noted that she can only drive short distances because of the pain associated with sitting for long periods. If she needs to drive a longer distance, she has someone else drive for her. (R. at 64). Her children similarly assist her with the laundry - she needs help removing clothes from the dryer and is only able to fold the laundry because

she can do so while seated. (R. at 46-47). She primarily prepares microwavable meals and sandwiches due to her difficulties with standing long enough to cook full meals. (R. at 178-80, 196). Her children largely take care of themselves and perform most of the household chores. (R. at 178-79, 195). Because Love's testimony about her daily activities shows that her day-to-day life is strongly limited by her inability to stand, sit, or walk for extended periods, the court readily finds that these "everyday activities of short duration," *Lewis*, 125 F.3d at 1441, do not discredit her testimony.

### 2. Medical Records

Second, the ALJ relied on two medical records created in connection with Love's claim for benefits to discredit her testimony. The first was an examination performed by Dr. Celtin Robertson in May 2012. (R. at 285). The ALJ noted that Dr. Robertson found that Love was able to walk into the examination room and sit without acute distress, get on and off the exam table, walk with a normal gait, stand but not walk on her toes and heels, and squat about halfway down with assistance. Dr. Robertson noted no tenderness to palpation of the lower back and that Love possessed good muscle strength. (R. at 28, 286-87). Dr. Robertson diagnosed Love with back pain, (R. at 288), but he made no findings on the extent of her pain or its effect on her ability to work. In the total absence of such findings, Dr. Robertson's evaluation is

not substantial evidence upon which to discredit Love's testimony.

The ALJ then focused on the RFC assessment performed by Marsha Cameron, a Single Decision Maker (SDM), the title given to a person making an initial disability determination. *See* 20 C.F.R. § 404.906(b)(2). Importantly, Cameron found that Love could stand, sit, and/or walk for about six hours in an eight-hour workday. (R. at 81). Her RFC assessment was affirmed in August 2012 by Thomas O. Thomson, M.D., with the statement: "I have reviewed all the evidence in the file, and the RFC dated 6/19/2012 is affirmed as written." (R. at 384). Because of this affirmation, the ALJ considered the RFC assessment as opinion evidence. These opinions, however, were rendered without the benefit of any of the medical records submitted by Dr. Kendrick; without Dr. Kendrick's opinion that Love's pain would severely limit her ability to work (which conflicts with the RFC assessment, as discussed below); and without Love's testimony regarding her pain, its effects on her ability to work, and her cessation of work altogether. For these reasons, and for the reasons more fully discussed below, the RFC assessment is not substantial evidence upon which to discredit Love's testimony. Therefore, given that both of the ALJ's reasons to discredit Love's testimony are unsupported by substantial evidence, her testimony must be accepted as true.

## C. Rejection of Dr. Kendrick's Opinion

"The testimony of a treating physician must ordinarily be

given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor*, 786 F.2d at 1053. "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, [the Commissioner] as a matter of law . . . has accepted it as true." *MacGregor*, 786 F.2d at 1053.

In this case, Dr. Kendrick opined that Love's medical conditions cause her pain and that she is not malingering, stating that "[h]er symptoms are anatomically appropriate for her levels of previous surgery." According to Dr. Kendrick, a job requiring Love to sit or stand for prolonged periods during an eight-hour workday without the opportunity to recline would increase her pain, and such a pain increase would "cause serious distraction from job

tasks and/or result in a failure to complete job tasks in a timely manner on more than an occasional basis during a typical workday and/or workweek." (R. at 450-52). The ALJ considered this opinion but failed to explicitly state the weight given to it. This is itself reversible error. *See MacGregor*, 786 F.2d at 1053. The ALJ did, however, list four reasons for his implicit discounting of Dr. Kendrick's opinion. One of those reasons, that the opinion is not supported by the extent of Love's admitted activities, is the same as one of the ALJ's previously discussed reasons for discounting Love's subjective testimony. For the same reasons, that basis is not good cause to discredit Dr. Kendrick's opinion.

The next two reasons given by the ALJ, that Dr. Kendrick's opinion appears to rely only on Love's reporting of her symptoms and to be inconsistent with his own treatment notes, are largely related. The ALJ noted that Dr. Kendrick was aware of Love's part-time work but did not place any restrictions on her work and that he did not indicate any detected nerve root impingement when reviewing an MRI. (R. at 28). In defense of the ALJ's position, the Commissioner also pointed to Love's normal static tests (such as sitting erect and straight-leg raising) and (in the Commissioner's view) a somewhat moderate pain treatment regimen. (Doc. 13 at 14).

These reasons are not good cause to discredit Dr. Kendrick's opinion. During Love's visits, Dr. Kendrick repeatedly observed muscle spasms, back tenderness, a slowed gait with a limp, and

decreased sensation in her back. He prescribed many different pain medications in an attempt to alleviate her observed symptoms. (R. at 385-411, 426-49). Dr. Kendrick administered two epidurals to Love to more aggressively combat the pain. (R. at 53). He did not find her to be malingering, as evidenced by his continued aggressive treatment and by his submitted opinion. The ALJ's narrow reasons for finding a lack of support for Dr. Kendrick's opinion in his medical records fall far short of the good cause required to discredit a treating physician's opinion and substitute the ALJ's judgment based on the treating physician's own medical records. The lack of identified nerve root impingement or lifting restrictions come nowhere near offsetting the objective evidence of pain observed by Dr. Kendrick through his treating relationship with Love and the aggressive treatment undertaken.

Lastly, the ALJ found Dr. Kendrick's opinion to be inconsistent with the remainder of the medical record and discredited it on that basis. In support, he cited the RFC assessment performed by Marsha Cameron, SDM, and affirmed by Dr. Thomson, which found that Love could stand, sit, and/or walk for about six hours in an eight-hour workday, in contradiction with Dr. Kendrick's opinion. (R. at 81). These types of findings, made by state agency consultant physicians, are to be considered as opinion evidence and evaluated by the Commissioner under 20 C.F.R. § 404.1527. SSR 96-6P, 1996 WL 374180. Under that regulation, all

opinions are considered, but more weight is generally given to an examining relationship over a non-examining one and a treating source over a non-treating source. 20 C.F.R. § 404.1527(c). Given that Dr. Kendrick examined Love as her treating physician and that Dr. Thomson apparently did not examine Love, the ALJ must overcome a tall hurdle to use this opinion to discredit Dr. Kendrick. Other factors to consider include the length, nature, and extent of the treating relationship; the support cited for an opinion, which the regulation notes is particularly important for non-examining sources; consistency of the opinion with the record as a whole; and whether the holder of the opinion is a specialist in the area in which he opined. *Id.*

Dr. Kendrick's opinion plainly surpasses the RFC assessment in each of these areas. Dr. Kendrick is Love's examining and treating physician, while Dr. Thomson is neither. Love visited Dr. Kendrick's office eight times in the span of the six months for which records were submitted. Dr. Kendrick is a pain management specialist, while Dr. Thomson has no specialties noted in the record. And most importantly, the RFC assessment's finding that Love is able to work six hours in an eight-hour workday is only supported by a listing of Love's reported daily activities and brief summaries of some of the medical evidence in the record (none of which include Dr. Kendrick's records). (R. at 77-78, 80). Dr. Thomson's affirmance is similarly limited; he briefly summarized

some of the evidence, then simply affirmed the RFC assessment. (R. at 383-84). Without any real explanation for the finding that Love is able to work six hours in an eight-hour workday, the assessment cannot serve as a basis to discredit the more thoroughly explained opinion of Dr. Kendrick, Love's treating, examining pain management specialist. This is especially true given that the RFC assessment and affirmance were made before Love's visits with Dr. Kendrick and were therefore made without consideration of his records and expertise. Accordingly, the ALJ has not demonstrated good cause to discredit Dr. Kendrick's opinion, so it also must be accepted as true.

**CONCLUSION**

42 U.S.C. § 405(g) provides that a reviewing district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment . . . reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." When reversing a decision of the Commissioner, the district court may either remand the action to the Commissioner for further proceedings, potentially including a rehearing by the ALJ, or simply remand with the instruction that the Commissioner award benefits to the claimant. While the statute does not provide a standard for courts to employ, the Eleventh Circuit has stated:

> Generally, a reversal with remand to the [Commissioner] is warranted where the ALJ has failed to apply the correct legal standards. This court, however, may reverse the judgement of the district court and remand the case

> for an entry of an order awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.

*Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (internal citations omitted).

The Eleventh Circuit has found an award of benefits to be proper in cases where the ALJ improperly discredited the claimant's subjective testimony or the opinion of a treating physician. This is true because the claimant's testimony and physician's opinion must be accepted as true and they, when combined with evidence in the record such as the uncontroverted testimony of a VE, often conclusively show that the claimant is disabled. *See, e.g.*, *Hale*, 831 F.3d at 1012 (reversing the ALJ's decision and awarding the claimant benefits because it was undisputed and confirmed by the VE that if the claimant's testimony was accepted as true, the claimant could perform none of her past jobs and there were no jobs in significant numbers in the national economy that she could perform); *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1216-17 (11th Cir. 1991) (awarding the claimant benefits under the Railroad Retirement Act, a statute the court explicitly treated identically to the Social Security Act, because the Board improperly discounted a treating physician's opinion). Further, "'[a]mong the most persuasive arguments supporting the [pain standard] is the need to expedite disability claims,'" *Pollard v. Astrue*, 867 F. Supp. 2d

1225, 1229 (N.D. Ala. 2012) (quoting *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1401 (9th Cir. 1988)), so the court should not hesitate to award benefits instead of remanding for further proceedings when the testimony of a VE "avoid[s] the necessity of a remand," *id.* "This also holds true for the opinions of treating physicians." *Id.*

In this case, Love testified that she can only stand for five to fifteen minutes at a time, sit for thirty to forty minutes at a time, and walk for thirty to forty feet at a time, (R. at 56-57, 183), and that there was "no way" that she could work more than she did at her part-time job. (R. at 44). Dr. Kendrick opined that a job requiring Love to sit or stand for prolonged periods during an eight-hour workday without the opportunity to recline would increase her pain, and that such a pain increase would "cause serious distraction from job tasks and/or result in a failure to complete job tasks in a timely manner on more than an occasional basis during a typical workday and/or workweek." (R. at 450-51). The VE testified that a person would not be able to sustain employment if she suffered from increased pain levels due to prolonged sitting and standing that seriously interfered with her ability to complete jobs in a timely manner on more than an occasional basis and that missing more than two days of work per month would preclude employment. (R. at 69, 71).

Given that Love's testimony and Dr. Kendrick's opinion must be

accepted as true, the court readily concludes that their statements, in light of the VE's testimony, "establishes disability without any doubt," *Davis*, 985 F.2d at 534. Accordingly, the court will by separate order reverse the decision of the Commissioner and remand the action for an award of benefits.

DONE this 24th day of February, 2016.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

24